■ In the Matter of the Estate of BERNARD FIUMARA, Deceased. BERNARD P. FIUMARA, Appellant; JOSEPH ALESIO et al., Respondents.—In a probate proceeding, the contestant appeals from (1) a decree of the Surrogate's Court, Westchester County, dated October 1, 1976, which, after a jury trial, *inter alia,* directed that the will be admitted to probate and (2) a prior order of the same court, dated September 27, 1976, which, *inter alia,* denied contestant's motion for posttrial relief. Appeal from the order dismissed (see *Matter of Aho,* 39 NY2d 241, 248). Decree affirmed. Respondents are awarded one bill of costs to cover both appeals payable by appellant. No opinion. Damiani, J. P., Gulotta and O'Connor, JJ., concur; Suozzi, J., concurs as to the dismissal of the appeal from the order, but otherwise dissents and votes to reverse the decree and grant a new trial as to the issue of lack of testamentary capacity, with the following memorandum: The testator died on April 13, 1975 at the age of 75 years, and was survived by his two children, a daughter and a son. He had executed a will in 1970, prepared by one who had been his attorney for 20 years, leaving his entire estate in equal shares to his two children. In December, 1973 the testator retired to Italy to live. In July, 1974 the testator returned to New York and lived with his daughter, in her apartment, until his death. On August 15, 1974 the decedent executed a new will which left his entire estate to his daughter. That will was prepared by a new attorney who had been retained by the daughter. In this contested probate proceeding, the contestant, the testator's son, alleged that the testator's daughter had exercised undue influence over her father at the time he executed the will and that he lacked testamentary capacity to execute the will. During the jury trial on the admissibility of the will to probate, the Surrogate granted the proponent's motion to dismiss the contestant's objection with respect to undue influence and the jury found in favor of the proponent on the issue of testamentary capacity by a vote of five to one. It is my view that the Surrogate improperly restricted the contestant's questioning of his expert witness as to the decedent's testamentary capacity, thereby prejudicing his case on this issue. It is clear that the decedent's mental and physical condition on August 15, 1974 was a crucial area which had to be developed to the fullest in order for the jury to properly resolve this ultimate issue in the proceeding. The testimony adduced presented a sharp issue of fact with respect to decedent's mental and physical condition on that date. The contestant produced an expert witness, a neurologist, who had examined the decedent on October 22, 1974. The doctor testified most emphatically, and his testimony was never seriously challenged, that the decedent was suffering from a moderately severe degree of senile dementia. This is a progressively worsening disease which affects the thinking portion of the brain due to a deterioration of the brain cells. It causes an inability to function mentally, remember and understand relationships. According to the doctor,

the decedent had no lucid intervals on October 22, 1974, which was consistent with "the severity of the senile process", and, if the decedent had signed a will on October 22, 1974, "he could not have known what he was doing". Based upon his knowledge of the nature of the progression of the disease, the doctor opined that the senile state had been present for two years and that the decedent had the disease of senile dementia with "little or no difference" in degree from that exhibited on October 22, 1974, as early as the period of May through July, 1974, with the resulting lack of lucid intervals. Although the question of testamentary capacity was submitted to the jury, which decided adversely to the contestant by a five to one vote, it is my view that a new trial is mandated on this question due to an erroneous ruling by the Surrogate during the direct examination of the doctor. During the course of the doctor's medical testimony, as heretofore set forth, the Surrogate ruled that the doctor could be asked to state his opinion with respect to the decedent's ability to sign any agreement or instrument on August 15, 1974. Yet, when the contestant's counsel attempted, immediately after that ruling, to ask the doctor that very question, the Surrogate sustained an objection by the proponent. In view of the doctor's prior testimony that there was little or no difference in the degree of senile dementia that decedent had on October 22, 1974 and on August 15, 1974, and that decedent could not have had a lucid interval on either date, the question by contestant's counsel was perfectly proper. The Surrogate's favorable ruling on the proponent's objection effectively reversed his prior ruling. This could only have confused the jury and prevented it from obtaining vital expert testimony on a crucial aspect of the case. Accordingly, I vote to reverse the decree and to grant a new trial on the issue of testamentary capacity.